# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JESSICA WHITE,

    Plaintiff,

v.                                                                                                      No. CV 16-571 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Jessica White's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 17), filed January 20, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum*, (the "Response"), (Doc. 19), filed March 30, 2017; and Ms. White's *Reply in Support of Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 21), filed April 24, 2017.

Ms. White filed applications for supplemental security income and disability insurance benefits on June 18, 2012, alleging disability beginning May 25, 2008. (Administrative Record "AR" 22). Ms. White claimed she was limited in her ability to work due to bipolar disorder, Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Hyperactivity Disorder ("ADHD"), depression, and Obsessive Compulsive Disorder ("OCD"). (AR 262). Ms. White's applications were denied initially on December 3, 2012, and upon reconsideration on July 10, 2013. (AR 22). Ms. White requested a hearing

before an Administrative Law Judge ("ALJ"), which was held on October 3, 2014, before ALJ John W. Rolph. (AR 36). Ms. White and Nicole King, an impartial vocational expert ("VE"), testified at the hearing, and Michael Armstrong, an attorney, represented Ms. White at the hearing. (AR 36-70).

On January 21, 2015, ALJ Rolph issued his decision, finding Ms. White not disabled at any time between her alleged disability onset date through the date of the decision. (AR 30). Ms. White requested review by the Appeals Council, (AR 14), which was denied, (AR 1-3), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. White now argues that the ALJ erred in considering and weighing the opinions of State Agency Consultative Examining Psychologist John Owen, Ph.D., and Licensed Professional Clinical Counselor ("LPCC"), Lisa Harvey. (Doc. 17 at 13-20). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration and weighing of Dr. Owen's and Ms. Harvey's opinions, the Court finds that Plaintiff's motion should be **GRANTED**.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not

2

entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Ms. White applied for supplemental security income and disability insurance benefits due to bipolar disorder, PTSD, ADHD, depression, and OCD. (AR 262). At step one, the ALJ determined that Ms. White had not engaged in substantial gainful activity since May 25, 2008, the alleged onset date. (AR 20). At step two, the ALJ concluded that Ms. White was severely impaired by PTSD, Bipolar Disorder, Major Depressive Disorder ("MDD"), ADHD, and OCD. (AR 20-21). At step three, the ALJ determined that none of Ms. White's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 21-22).

At step four the ALJ found that Ms. White has the RFC to perform a full range of work at all exertional levels. (AR 22). The ALJ further found that Ms. White: is capable of learning, remembering, and performing simple, routine, and repetitive tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress environment, defined as one in which there is a regular pace, few work place changes, and no "over the shoulder" supervision; can maintain concentration, persistence, and pace for two hours at a time with normal breaks; may have occasional and superficial contact with supervisors and co-workers; may have minimal to no contact with the public; and will perform optimally in work tasks that do not require teamwork and which allow her to work independently of others. (AR 22-23). In formulating Ms. White's RFC, the ALJ stated that he considered Ms. White's mental health history, Ms. White's subjective complaints of her psychological symptoms, and the medical evidence in the record. (AR 23-27). The ALJ found that Ms. White's statements as to the intensity,

persistence, and limiting effects of her symptoms were "not entirely credible." (AR 25). The ALJ found that, while Ms. White's medical records tend to corroborate her reports that she has PTSD, bipolar disorder, ADHD, OCD and depression, "they do not entirely confirm that their intensity and limiting effects are as great as [Ms. White] alleges." (AR 25). For example, the ALJ reasoned that Ms. White has consistently attended and completed her college courses and has repeatedly reported that her mood was stable with her medications. (AR 25). The ALJ stated that Ms. White's "many mental status examinations, while generally revealing abnormalities with respect to her mood and affect, have rarely shown serious problems with respect to [Ms. White's] thought processes, appearance, insight and judgment, or cognitive functioning," and that Ms. White and her doctors have described her as having stable thoughts at many appointments. (AR 25).

Turning to opinion evidence, the ALJ first evaluated the assessment provided by consultative examiner Dr. Owen. (AR 25). Dr. Owen diagnosed Plaintiff with PTSD, OCD, and a history of sexual abuse as a child, and stated that he could not formally diagnose bipolar disorder, but "it should be considered." (AR 466-67). The ALJ stated that he gave significant weight to Dr. Owen's opinions that Ms. White has impairments that are between slight and moderate levels of severity. (AR 25). The ALJ stated that Dr. Owen opined that Ms. White has marked difficulty in concentration and in her ability to interact with the public, and the ALJ gave "only some weight to Dr. Owen on this particular assessment" because this opinion "appears excessive in light of [Ms. White's] ability to attend college classes without significant distress." (AR 26).

Next, the ALJ considered the opinions of Ms. Harvey, LPCC. (AR 26). The ALJ gave Ms. Harvey's September 11, 2014, opinions "little weight," stating that Ms. Harvey is not an acceptable medical source, the record does not contain any treatment notes from Ms. Harvey to support her findings, Ms. White's records show that she has good focus and concentration when she is on her medications, and Ms. White scored a 29 out of 30 on the Mini Mental Status Exam. (AR 26). As to Ms. Harvey's September 27, 2014, opinion that Ms. White has been disabled since before June 30, 2010, the ALJ again noted that Ms. Harvey is not an acceptable medical source, and stated that he gave this opinion little weight because it is not supported by the evidence in the record. (AR 26). The ALJ further stated that this opinion "is belied by the fact that [Ms. White] regularly attends college classes and actively applies for jobs," and that the decision of whether or not a person is disabled is reserved for the Commissioner. (AR 26).

The ALJ next gave great weight to the assessments of Dr. Ralph Robinowitz and Dr. Howard Atkins, who found that Ms. White has no limitations with respect to activities of daily living, moderate limitations with respect to social functioning, and mild limitations with respect to concentration, persistence, and pace due to depression and anxiety. (AR 26). The ALJ found that these opinions are consistent with medical evidence in the record and Ms. White's activities of daily living. (AR 26). The ALJ gave "some weight" to the opinions of Bryan Krumm, CNP, who found that Ms. White should avoid activities involving: performing a variety of duties; performing effectively under stress; dealing with people; making judgment and decisions; influencing people in their opinions, attitudes, and judgments; and directing, controlling, or planning activities of others. (AR 26). The ALJ stated that these opinions "are somewhat consistent with the medical

7

evidence of record," but that he "cannot give Mr. Krumm controlling weight, as he is not an acceptable medical source and [Ms. White's] reported ability to care for her children and attend school suggest that her limitations are less than he opined." (AR 26).

The ALJ stated that he found Ms. White to be partially credible and gave her testimony little weight. (AR 27). In support of this finding, the ALJ noted that Ms. White waited over four years to apply for disability benefits, she had significant work after her alleged onset date, no treating source has suggested she is unable to work, she has pursued a college degree, and she was required by the Temporary Assistance to Needy Families ("TANF") program to complete 40 hours of work, school, or volunteer work every two weeks. (AR 27). The ALJ additionally reasoned that the medical evidence shows that Ms. White's mental impairments are "fairly well controlled on her medications," that Ms. White is able to care for her three minor children and two cats, and attend college, and that Ms. White's GAF scores have been between 55 and 65 since 2012, which show that she has moderate symptoms, or moderate difficulty in social, occupational, or school functioning. (AR 27).

Finally, the ALJ stated "[i]n sum, the above [RFC] assessment is supported by objective evidence of record, including the consultative examinations in evidence; the state agency's opinions' and [Ms. White's] activities of daily living." (AR 27). The ALJ then explained that, based on the testimony of the VE, Ms. White is unable to perform any of her past relevant work. (AR 27-28). Accordingly, the ALJ proceeded to step five.

At step five, the ALJ inquired whether Ms. White would be able to perform any other work existing in significant numbers in the national economy. (AR 28-29). The ALJ noted that Ms. White was 21 years old on the alleged disability onset date, and

therefore classified as a "younger individual" in accordance with the Regulations. (AR 28). The ALJ also determined that Ms. White has at least a high school education and is able to communicate in English. (AR 28).

The VE testified at the hearing that an individual with Ms. White's same age, education, work experience, and RFC could perform the jobs of harvest worker, landscape worker, and janitor. (AR 29). The VE stated that those jobs existed in significant numbers in the national economy. (AR 29). After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 29).

The ALJ concluded that because Ms. White is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 29-30).

## IV. Analysis

Ms. White argues that the ALJ erred in considering and weighing the opinions of Dr. Owen and Ms. Harvey. (Doc. 17 at 13-20). The Commissioner responds that the ALJ properly considered all medical opinions in the record. (Doc. 19 at 9). The Commissioner argues that Ms. White's claims regarding the ALJ's consideration of Dr. Owen's and Ms. Harvey's opinions are without merit because the ALJ's RFC finding is supported by substantial evidence in the record. (Doc. 19 at 9-11). In addition, the Commissioner contends that, because the ALJ's RFC determination accounted for limitations that were consistent with the record, the ALJ's decision that Ms. White is not disabled is supported by substantial evidence. (Doc. 19 at 11-14).

### A. *Requirement to Weigh All Medical Opinions in the Record*

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Further, the Commissioner may not rationalize the ALJ's decision post

hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

    B.  <u>*The ALJ's Analysis of Medical Opinions in the Record*</u>

With regard to opinion evidence in the record, the ALJ states that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 23). In his decision, the ALJ discussed the specific findings of Dr. Owen, Ms. Harvey, the state agency consultants, and Bryan Krumm, CNP. (AR 25-26).

    1.  *Dr. Owen's Opinions*

Ms. White argues that the ALJ erred by failing to incorporate into the RFC Dr. Owen's opinion that Ms. White has moderate difficulty in her ability to maintain attention and concentration. (Doc. 17 at 13-14). Ms. White contends that the ALJ's "discussion as to Ms. White's concentration is mere speculation" and that the ALJ "oversteps his bounds into the province of medicine and acts as a consulting medical source." (Doc. 17 at 15). Ms. White also contends that the ALJ "could not assign 'significant weight' to Dr. Owen's opinion and simultaneously fail to incorporate a limitation assessed by him into Ms. White's RFC," and that the ALJ "committed clear legal error by choosing to incorporate only those portions of Dr. Owen's findings that were conducive to a finding of nondisability." *Id.*

Dr. Owen performed a mental status examination of Ms. White on November 9, 2012. (AR 465-68). In the report, Dr. Owen diagnosed Ms. White with PTSD, OCD, a history of sexual abuse as a child, and stated that he could not formally diagnose bipolar disorder, but that "it should be considered." (AR 466-67). Dr. Owen gave a

11

"statement of opinion of abilities," in which he found that Ms. White has moderate difficulty understanding and remembering detailed or complex instructions; moderate difficulty attending and concentrating; marked difficulty interacting with the public; moderate to marked difficulty interacting with co-workers and supervisors; moderate difficulty adapting to changes in the workplace; and moderate to marked difficulty using public transportation. (AR 467).

The ALJ stated that he gave significant weight to Dr. Owen's opinions that Ms. White has impairments that are between slight and moderate levels of severity. (AR 25). The ALJ further stated that Dr. Owen opined that Ms. White has marked limitations in her ability to concentrate and interact with the public, and the ALJ stated that he gave "only some weight to Dr. Owen on this particular assessment" because this opinion "appears excessive in light of [Ms. White's] ability to attend college classes without significant distress." (AR 26). These findings by the ALJ are confusing because Dr. Owen did not find that Ms. White has *marked* limitations in her ability to concentrate; instead, he found that Ms. White has *moderate* limitations in her ability to concentrate. (AR 467). Therefore, it is not clear to the Court whether the ALJ gave this finding significant weight or only some weight.

If the ALJ gave significant weight to Dr. Owen's finding that Ms. White has moderate limitations in her ability to concentrate, then the ALJ erred by failing to account for this limitation in his RFC determination, in which he found that Ms. White can maintain concentration for two hours at a time with normal breaks. (AR 23). If, however, the ALJ gave this opinion only some weight, the ALJ failed to clearly account for why he did so. The ALJ stated that Dr. Owen's "suggestion that [Ms. White] has

12

'marked' limitations in concentration and in interacting with the public appears excessive in light of her ability to attend college classes without significant distress." (AR 25-26). Again, it is not clear that the ALJ intended to reject Dr. Owen's opinion regarding Ms. White's ability to concentrate, because the ALJ incorrectly stated that Dr. Owen found *marked* limitations in this ability. Moreover, the ALJ's purported reason for discounting this opinion—that Ms. White was able to attend college classes without significant distress—is contradicted by Ms. White's testimony at the hearing that she stopped attending college after three semesters because she could not handle the stress. (AR 59). In addition, the ALJ failed to note that Dr. Owen's opinion regarding Ms. White's ability to concentrate is consistent with other similar findings in the record. (*See* AR 80, Dr. Robinowitz' finding that Ms. White has a moderate limitation in the ability to maintain attention and concentration for extended periods of time; AR 107, Dr. Atkins' affirmance of Dr. Robinowitz' finding; and AR 499, Ms. Harvey's finding that Ms. White has marked limitations in her ability to maintain attention and concentration for extended periods of time, i.e. 2-hour segments).

The Commissioner contends that the ALJ did not err because Dr. Owen's opinions finding moderate to marked limitations are inconsistent with the record as a whole. (Doc. 19 at 12). This is a post hoc rationalization, however, and the Court may not adopt reasons that are not stated in the ALJ's decision in order to affirm the ALJ. *See Carpenter*, 537 F.3d at 1267 ("Judicial review is limited to the reasons stated in the ALJ's decision.") (citation omitted).

Based on the foregoing, the Court finds that the ALJ failed to give reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that he

assigned to Dr. Owen's opinions (*Langley*, 373 F.3d at 1119 (citation omitted)), and failed to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" (SSR 96-8p, 1996 WL 374184, at *7). Therefore, the Court agrees with Ms. White that the ALJ's findings with regard to Dr. Owen's opinions do not permit meaningful review and that the ALJ failed to follow proper legal standards.

    2. *Ms. Harvey's Opinions*

Ms. White next argues that the ALJ failed to provide adequate reasons, supported by clear reasoning, in rejecting Ms. Harvey's opinions. (Doc. 17 at 18). Ms. White states that Ms. Harvey was part of the team at Sage Neuroscience Center providing treatment to Ms. White, that she saw Ms. Harvey every two weeks for two to three years, and that Ms. Harvey had access to Ms. White's treatment records at that facility. *Id.*; (AR 44-45). Ms. White further argues that Ms. Harvey's opinions are consistent with Mr. Krumm's treatment notes. (Doc. 17 at 19).

Ms. Harvey was Ms. White's counselor at Sage Neuroscience Center (Doc. 17 at 9), and she conducted a Medical Assessment of Ability to do Work-Related Activities (Mental) for Ms. White on September 11, 2014 (AR 499-501).[2] Ms. Harvey diagnosed Ms. White with "social withdrawal/elevated mood or irritability," which "can cause marked impairment in occupational functioning [and] relationships with others." (AR 500). Ms. Harvey opined that Ms. White has moderate limitations in: understanding and remembering detailed information; carrying out detailed instructions; working in coordination with or proximity to others without being distracted by them; completing a

---

[2] Ms. White does not challenge the ALJ's treatment of Ms. Harvey's September 27, 2014 opinion that Ms. White has been disabled since before June 30, 2010. (AR 504).

14

normal workday and workweek without interruptions from psychological based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work place. (AR 499-500). Ms. Harvey further found that Ms. White has marked limitations in maintaining attention and concentration for extended periods of time (i.e. 2-hour segments), and traveling in unfamiliar places or using public transportation. (AR 499-500).

The ALJ stated that he gave these opinions little weight because: Ms. Harvey is not an acceptable medical source; the record does not contain any treatment notes from Ms. Harvey to support her findings; Ms. White's "records show that she has good focus and concentration when she is on her medications;" and Ms. White scored a 29 out of 30 on the Mini Mental Status Exam. (AR 26). In considering Ms. Harvey's opinions, the ALJ did not discuss the records from Sage Neuroscience Center (AR 398-417, 443-63, 479-82, and 486-96).

Ms. Harvey is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). "Acceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. *Id.* Rather, Ms. Harvey is an "other" medical source, pursuant to 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because '[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' . . .

15

Further, 'only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (quoting SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006))*.*

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 06-03p clarifies that the factors used in weighing medical opinions of acceptable medical sources "set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *5). Adjudicators are instructed to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *6).

Given the length and frequency of the treatment provided by Ms. Harvey, her opinions as to Ms. White's mental limitations should have been properly weighed against other medical opinions in the record. The ALJ also was required to adequately explain why he rejected Ms. Harvey's opinions as to Ms. White's functioning. It appears that the ALJ agreed with some of Ms. Harvey's opinions—such as her opinions that Ms. White has moderate limitations in her abilities to understand, remember, and carry out detailed information, and in interacting with supervisors and coworkers—because the ALJ accounted for these limitations in his RFC determination. (AR 22-23). However, the ALJ states that he gave Ms. Harvey's opinions only little weight, without specifying which of her opinions he assigned this weight. The ALJ's decision, therefore, is not sufficiently specific with regard to Ms. Harvey's opinions and the Court is unable to meaningfully review the ALJ's findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."); *see also Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted); *Lewis v. Berryhill*, No. 16-5061, 2017 WL 676502, at *2 (10th Cir. Feb. 21, 2017) (unpublished) (holding that the ALJ erred when he did not specify which parts of a doctor's opinion

were inconsistent with other medical evidence, and finding this "lack of specificity [to be] confusing" in light of agreement on some issues between the ALJ and the doctor).

The Commissioner contends that the ALJ was not required to consider the Sage Neuroscience records as support for Ms. Harvey's opinions because those records are from sources other than Ms. Harvey. (Doc. 19 at 13). The Commissioner fails to provide any legal support for this contention, and an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). While the ALJ stated that Ms. White has good focus and concentration when she is on her medications, and that she scored a 29 out of 30 on the Mini Mental Status Exam, the ALJ failed to note that Ms. Harvey's opinions regarding Ms. White's limitations are consistent with other, similar findings in the record. (*See* AR 80, Dr. Robinowitz' findings of moderate limitations; AR 107, Dr. Atkins' affirmance of Dr. Robinowitz' findings; AR 467, Dr. Owen's findings of moderate and marked limitations; and AR 501, Mr. Krumm's findings of limitations). The ALJ's failure to account for how he resolved these inconsistencies constitutes legal error. *See Kerwin*, 244 Fed. Appx. at 884.

**V.     Conclusion**

For the reasons stated above, the Court concludes that the ALJ failed to properly weigh the medical opinions of Dr. Owen and Ms. Harvey. On remand, the ALJ should properly weigh all medical opinions in the record.

**IT IS THEREFORE ORDERED** that Ms. White's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 17), is **GRANTED**, and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE